CaRütheRS, «L,
delivered the opinion of the Court.
William Alderson died in Maury county in 1838, leaving a will which was regularly proved and recorded. The third clause, on which this controversy arises, is in these words:
“I give and leave in the hands and possession of my two sons, William B. and Balthus C. Alderson, the o'ne-fourth part of said balance of all my estate and the increase thereof, to he by them taken care of for the express use and benefit of my daughter Susan Alderson and her children that she now has or may have, and apply it to their use and benefit and no other whatever, and at her death to be equally divided between her children.” Under this clause the trustees received several slaves and a tract of land.
The said Susan was the wife of Eortunatus Alderson, who was the father of her three children then living and the one born afterwards. He was a dissipated man, totally unfit to take care of property. The children of said Susan living at the date of the will were John B., Nancy, and Rachel E.; and there was born to her after-wards a daughter named Sarah. These were the only *255 children the said Susan, who’ is still living, ever had. Her son John B. Alderson married Mary Ann Gilliam in 1850, and died in a few months thereafter without children, leaving the said Mary Ann surviving. Robert Gilliam and the father of deceased became his administrators. The complainant Harris married Rachel E. in December, 1849, and she died, without children, the next April. In June, 1855, complainant took out letters of administration upon the estate, and filed this bill on the 9th day of the same month. He claims, as representative of his deceased wife, her equal share of the personal property, consisting now of ten or twelve slaves,' embraced in the said third clause of the will of William Alderson, as tenant in common with the said Susan and the other children, and an account of the annual receipts of rents and hire. ■
The Chancellor decreed that he was entirely excluded, on the ground that what is called the “class doctrine” applied, and consequently the remainder-interest in the property as an aggregate fund would go, at the termination of the life-estate of said Susan, to such of her children as might be then living, and the bill was dismissed.
As has been correctly remarked in argument, the difficulty in this class of cases is not generally so much in the law by which they are governed, as in the proper construction of instruments and the application of admitted principles.
1. As to the first point, which is that on which the Chancellor disposed of the case, it is unnecessary to look beyond our own reported cases for the legal rules by which the construction of this will is to be governed. *256 The rule stated in Ivey vs. Satterfield, 11 Humph., which it is so often attempted to misapply, is, that where an estate is given to one for life, with remainder to children as a class, those only can take who fall within the class as described at the termination of the life-estate, to the exclusion of the representatives of others who have died before the event. In Bridgewater vs. Gordon, 2 Sneed, 5, the other branch of the doctrine came up before the Court, and the rule was stated to be, that where an estate is given to one for life, with several and vested interests in remainder to children as individuals, each of the children has a transmissible interest. The two cases are not in conflict with each other when correctly understood, but only present the two classes of cases, which are so fully treated of in the books on that branch of the law. This case falls under the Bridgewater and not the Satterfield case. The property is for the use and benefit of said Susan and her children that she now has or may have.” To these — that is, to those children then in being, three in number, or that might thereafter be born to her — the property is to go at her death. The remainder could not be more fixed or certain in each child then in existence, opening to let in such as might be born afterwards, if they had been named. It was then “ a several and vested interest in remainder to the children as individuals,” and not as a class. On this point in the case we have no difficulty.
2. The next question is in relation to the rents and hire, of which the complainant claims an account, as the representative of his deceased wife, upon the assumption that the said Susan and her children were entitled to that fund in common, the right of all being equal. The pro- *257 tbis is connected starts out thus: “All the rest of my estate, both real and personal, to be equally divided between my four children, according to valuation, namely, William B. Alderson, Eidelia Eorgey, Susan Alderson, and Baltbus Alderson.” Here is a distinct gift of one-fourth of the residue of his estate to his daughter Susan. He, then, in four different clauses, gives to each by name one-fourth separately, but vests the portion of Susan in trustees, in the clause under discussion. By this, we think the intention is clearly evinced that the daughter was the first and her children the secondary object of his bounty. They have no joint or common right given to them in the property, but only a vested remainder, to be enjoyed in possession after her death. Nor have they any right to the use or income of the property, except for maintenance and support as members of her family. She is entitled to have and receive it, charged with the support of the children. There is no other restriction upon her enjoyment of the income ; and she is not 'bound to invest any excess for the purpose of accumulation.
The complainant is not entitled to the relief sought in his bill, except so far as to declare his right in remainder to the share of said slaves to which his wife was entitled under the will.
A decree will be prepared accordingly, and the case will be remanded for such orders as may become necessary for the safety of the property for those entitled to the remainder.